**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
_____ :
                                :
UNITED STATES OF AMERICA, ex    :
rel. MARC SILVER, et al.,       :
                                :
              Relators,         :        Civil Action No.
                                :        11-1326
          v.                    :
                                :
OMNICARE, INC., et al.,         :        OPINION
                                :
              Defendants.       :
                                :
_____ :
```

LISA J. RODRIGUEZ
NICOLE M. ACCHIONE
Schnader Harrison Segal & Lewis LLP
Woodland Falls Corporate Park
220 Lake Drive East
Suite 200
Cherry Hill, NJ 08002-1165

SHAUNA BRIE ITRI
BERGER & MONTAGUE PC
1622 LOCUST STREET
PHILADELPHIA, PA 19103

*Attorneys for Relators*

JUDITH H. GERMANO
GERMANO LAW LLC
460 BLOOMFIELD AVENUE
SUITE 200
MONTCLAIR, NJ 07043

*Attorney for Defendant PharMerica Corp.*

HILLMAN, District Judge:

Relator, Marc Silver, filed a *qui tam* action for violations of the False Claims Act ("FCA") against defendants alleging that defendants engaged in a scheme that violated the Anti-Kickback Statute by offering nursing homes below market prices for drugs to patients insured by Medicare Part A in exchange for referrals of prescriptions for nursing home patients insured by Medicare Part D or by Medicaid.  Defendant PharMerica Corp. ("PharMerica") filed a motion to dismiss Relators' third amended complaint.  For reasons explained below, PharMerica's motion will be denied in part and granted in part.  PharMerica's motion will be granted as to the statute of limitations on Relator's federal FCA claims because federal FCA liability cannot extend to claims submitted to the government earlier than March 4, 2005.  On all other issues raised in PharMerica's motion to dismiss, the motion is denied.

I.   **FACUTUAL AND PROCEDURAL BACKGROUND**

On March 4, 2011, Relator filed a complaint, under seal, against several defendants for violations of the FCA.  Marc Silver filed the complaint as a *qui tam* relator on behalf of the United States under the FCA, as well as 27 states and the District of Columbia under their respective state false claims acts.

2

The United States and all 27 states have declined to
intervene in this matter.  The matter was then unsealed and
Relator has amended his complaint three times.  The operative
complaint is the third amended complaint.

In the third amended complaint,[1] Relator alleges defendants
created an illegal kickback scheme which involved a practice
known as "swapping."  Specifically, that defendant "offered
commercially unreasonable, below fair-market-value prices for
prescription drugs to nursing homes for the nursing homes'
Medicare Part A patients, in exchange for the opportunity to
provide the same drugs, at a substantially higher, market-driven
cost, to the nursing home's Medicaid and Medicare Part D
patients."[2]  The complaint further alleges that the kickbacks

---

1    For reasons of brevity, hereinafter, the third amended
complaint will be referred to in this Opinion as the complaint.

2    As described by Relator, Title XVIII of the Social Security
Act, 42 U.S.C. § 1395 et seq., established the Medicare program.
Part A of the Medicare program ("Part A") covers inpatient
services furnished to Medicare beneficiaries by participating
providers, including hospitals and nursing homes. 42 U.S.C.S. §
1395d(a).  Nursing homes are reimbursed under Part A.  Since
July 1, 1998, Medicare Part A pays nursing homes a flat rate to
provide medical care and prescription drugs to residents.  Under
Medicare Part D, the federal government pays institutional
pharmacies, and the states are required to reimburse the federal
government for the states' portion of the obligation, or
"clawback" payment.

Title XIX of the Social Security Act, 42 U.S.C.S. § 1396 et
seq., established Medicaid.  Medicaid is a cooperative federal-

involved inducements to nursing homes in exchange for the revenue provided by other government payors.  Relator alleges that the kickbacks were provided in various forms, such as: 1) steeply discounted per diem prices for drugs, 2) steeply discounted average wholesale prices ("AWP") for drugs, and 3) free drugs.  Relator alleges the scheme was nationwide and ran from 1998 to the present and that kickbacks were paid to skilled nursing facilities ("SNF") in New Jersey and California.

Defendant PharMerica argues that the third amended complaint must be dismissed because a FCA claim must be plead with particularity and Relator fails to adequately plead fraud with specificity as required under Federal Rule of Civil Procedure 9(b).  PharMerica also argues that the complaint fails to state a claim for conspiracy and fails to plead facts that show PharMerica can be held liable for the acts of its subsidiaries Kindred or Chem Rx.  PharMerica also raises a statute of limitations defense and argues that the state law claims should be dismissed.

## II.  JURISDICTION

Relator has alleged that defendant violated the federal

---

state program through which the federal government provides financial assistance to states so that they may furnish medical care to needy individuals.  The Medicaid programs of all states reimburse for prescription drugs.

False Claims Act, 31 U.S.C. § 3729, et seq., and the federal
Anti-Kickback Statute, 42 U.S.C.A. § 1320a-7b, et seq.
Therefore, this Court exercises subject matter jurisdiction
pursuant to 28 U.S.C. § 1331 (federal question jurisdiction)
and exercises supplemental jurisdiction over Relator's related
state law claims pursuant to 28 U.S.C. § 1367.

III. **DISCUSSION**

A. **Standard for 12(b)(6) Motion to Dismiss**

When considering a motion to dismiss a complaint for
failure to state a claim upon which relief can be granted
pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all
well-pleaded allegations in the complaint as true and view them
in the light most favorable to the Relator.   Evancho v. Fisher,
423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a
pleading is sufficient if it contains "a short and plain
statement of the claim showing that the pleader is entitled to
relief." Fed. R. Civ. P. 8(a)(2).  Under the liberal federal
pleading rules, it is not necessary to plead evidence, and it is
not necessary to plead all the facts that serve as a basis for
the claim. Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d
Cir. 1977).  However, "[a]lthough the Federal Rules of Civil
Procedure do not require a claimant to set forth an intricately
detailed description of the asserted basis for relief, they do

5

require that the pleadings give defendant fair notice of what the Relator's claim is and the grounds upon which it rests." Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a Relator will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed a three step approach in reviewing a complaint under Rule 12(b)(6).  Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).  "First, the court must 'tak[e] note of the elements a Relator must plead to state a claim.'"  Id. (citing Iqbal, 129 S.Ct. at 1947).  Second, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but

6

may disregard any legal conclusions.  Id.; Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950).  Finally, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the Relator has a "'plausible claim for relief.'"  Id. (quoting Iqbal, 129 S. Ct. at 1950).  A complaint must do more than allege the Relator's entitlement to relief.  Id.; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").  A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

        Finally, a court in reviewing a Rule 12(b)(6) motion must

only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the Relator's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

   B. **Standard Pursuant to Fed. R. Civ. P. 9(b)**

   The parties do not dispute that Relator's claims of violations of the federal FCA require that such allegations must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b).  United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc., 149 F.3d 227, 234 (3d Cir. 1998). Accordingly, Relator must plead "with particularity the circumstances constituting fraud [,]" but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed.R.Civ.P. 9(b); Iqbal, 556 U.S. at 686. The Third Circuit has held that "Fed.R.Civ.P. 9(b) requires

8

Relators to plead the circumstances of the alleged fraud with particularity to ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989)).  Although Rule 9(b) allows conditions of the mind to be alleged "generally," the allegations must still meet the pleading requirements of Rule 8(a).  Iqbal, 556 U.S. at 686-87. There is some relaxation of Rule 9(b) when factual information is peculiarly within the defendant's knowledge or control. Craftmatic, 890 F.2d at 645.

Recently, in Foglia v. Renal Ventures Management, LLC, 754 F.3d 153, 155-56 (3d Cir. 2014), the Third Circuit further clarified the Rule 9(b) standard applied in FCA cases.  In order for a relator to satisfy the standards of Rule 9(b) in a FCA case, "... he must provide 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'"  Id. at 157-58 (rejecting a standard that would require relator to provide a representative sample of the alleged fraudulent conduct, specifying the time, place, and content of the acts and the identity of the actors).  "Describing a mere opportunity for fraud will not suffice."  Id. at 158.  "Sufficient facts to

9

establish 'a plausible ground for relief' must be alleged." <u>Id.</u>
The Third Circuit acknowledged in <u>Foglia</u> that the relator's
false claim was not presented clearly, but deduced what seemed
to be the Relator's argument. <u>Id.</u> (recognizing that the
relator's assumed hypothesis could be challenged but concluding
that it gave defendant notice of the charges, and that only the
defendant has access to the documents that could prove relator's
claim one way or the other).

C. **PharMerica's Motion to Dismiss**

1. **Rule 9(b)**

PharMerica argues that all but 13 of the 326 paragraphs of
the complaint contain generalized allegations regarding conduct
of "the Pharmacy Defendants," "institutional pharmacies," or
other defendants and fails to specifically allege as to
PharMerica details concerning the dates of the claims, the
content of the forms or bills submitted, identification numbers,
the amount of money charged to the government, the particular
goods or services for which the government was billed, the
individuals involved in the billing, and the length of time
between the alleged fraudulent practices and the submission of
claims based on those practices.

Under the recently promulgated <u>Foglia</u> standard, Silver has
alleged sufficient facts under Rule 9(b) to support his FCA

claim against PharMerica.  Silver has alleged enough particular details of a scheme to submit false claims paired with reliable indicia that leads to a strong inference that claims were actually submitted.  See id. at 157-58.  Silver is not required at the pleading stage to specify dates of the claims, the content of the forms or bills submitted, identification numbers, the amount of money charged to the government, the particular goods or services for which the government was billed, the individuals involved in the billing, or the length of time between the alleged fraudulent practices and the submission of claims based on those practices.  See id.  Therefore, the allegations in the complaint against PharMerica satisfy Rule 9(b).

### 2. Anti-Kickback Statute

PharMerica argues that the complaint fails to allege facts to support the allegation that the per diem prices that Kindred and Chem Rx offered nursing homes were remuneration under the AKS because it fails to specify how Kindred or Chem Rx arrived at those prices or about how they negotiated those prices with the nursing homes.  PharMerica also argues that the complaint does not allege any facts showing what the fair market value was in the relevant markets and does not specify Kindred's or Chem Rx's costs at the time, or what their costs might have been for

11

the specific drugs covered by the per diem prices in the contracts identified in the complaint.

In addition, PharMerica argues that the complaint fails to allege facts to support that PharMerica (through Kindred or Chem Rx) offered the per diem prices in the contracts to induce the referral of prescriptions for patients covered by Medicare Part D or by Medicaid.  PharMerica also argues that the complaint alleges no facts to show that PharMerica was billing Medicare Part D or Medicaid at a "much higher rate."

PharMerica further argues that the complaint does not allege facts showing that PharMerica knowingly submitted claims for payment to the government for drugs that PharMerica dispensed as a result of the alleged kickbacks.  Specifically, PharMerica argues that the complaint fails to identify any patients insured by any federal healthcare program, as opposed to private insurance, to whom Kindred or Chem Rx provided services as a result of the alleged kickbacks, such as how many patients resided there or the percentage of patients insured by Medicare Part D or Medicaid.  Finally, PharMerica argues that the complaint fails to identify any claim that PharMerica submitted to the government, or any claim that arose from the alleged kickbacks.

Based on the allegations in the complaint, Silver has

adequately alleged a kickback scheme in which PharMerica knowingly offered lower priced drugs to Part A nursing home patients in exchange for the opportunity to provide the same drugs at a higher cost to the nursing home's Medicaid and Medicare Part D patients.

The AKS, in relevant part, provides that

(2) whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—

(A) to refer an individual to a person for the furnishing or arranging for the furnishing of any time or service for which payment may be made in whole or in part under a Federal health care program, or

(B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,

shall be guilty of a felony upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

U.S. ex rel. Wilkins v. United Health Group, Inc., 659 F.3d 295, 311 (3d Cir. 2011 (citing 42 U.S.C. § 1320a-7b(b)(2)).

Silver alleges that PharMerica offered commercially unreasonable, below fair-market-value prices for prescription drugs to nursing homes for the nursing homes' Part A patients,

13

in exchange for the opportunity to provide the same drugs, at a substantially higher, market-driven cost, to the nursing home's Medicaid and Medicare Part D patients, and that PharMerica offered prices to nursing homes which fell far below its own acquisition costs, and even further below its own total costs.

Silver also alleges that PharMerica provided value in the form of discounts for Part A services that were not justified by normal business considerations with the purpose of inducing referral of patients to whom it provides Part B services. Specifically, Silver alleges "[a]lthough the form of the discount was not always the same, the goal was always to induce nursing homes with steep discounts in order to obtain the higher-paying business from other government payors." See Compl. ¶5. He also alleges "[t]hrough the schemes alleged in this complaint, nursing homes are choosing institutional pharmacies based upon the biggest inducement they can get, instead of basing their choices on the quality of the goods and services provided by the pharmacies." See Compl. ¶71. He further alleges that the kickbacks involved "... inducements to nursing homes in exchange for the revenue provided by other government payors." See Compl. ¶72.

With regard to government payment, Silver alleges that "defendant PharMerica's government reimbursements rose

14

consistently from 2006 through 2012 ($308.4 million to $1.2 billion).  The percentage of its sales that came from government payors also rose precipitously (47.2% to 56.7%)."  See Compl. ¶11 (providing a table indicating PharMerica's total sales and its approximate payor mix (as a percentage of annual sales) from 2005 through 2012).  Silver also details in his complaint the general government payment scheme to pharmacies such as PharMerica for drugs provided to patients insured by Medicare Part A and by Medicare Part D or by Medicaid.

Silver also has provided sufficient facts regarding how Medicare Part A and Part D payments are made for drugs provided to nursing home to show that nursing homes would want to receive the lowest price they could for Part A drugs, and how a pharmacy could in turn receive other business from higher paying government payors to recoup any loss from the Part A discounts.

Although Silver has not provided the exact price PharMerica charged a particular nursing home, or the amount of other business PharMerica received in return, such exact figures are not required under the Foglia standard.  Rather, Silver provided sufficient details of the "swapping" scheme and paired such details with reliable indicia of the Medicare payment system and revenue received by PharMerica leading to a strong inference that such Medicare claims were actually submitted.  See Foglia

15

754 F.3d at 157-58.  As such, Silver has plead the circumstances of the alleged fraud with particularity so that PharMerica is placed on notice of the precise misconduct with which it is charged.[3]  See Craftmatic, 890 F.2d at 645.

### 3. Conspiracy

PharMerica argues that Count III of the complaint, which alleges a conspiracy to violate the FCA under 31 U.S.C. § 3729(a)(1)(C), must be dismissed because it does not allege any agreement between PharMerica and its nursing home customers to submit false claims to the government, or an overt act in furtherance of such an agreement.

Silver has adequately plead a claim for conspiracy.  See 31 U.S.C. § 3729(a)(1)(C) (any person who "conspires to commit a violation of [the false claims act]" shall be liable under the act).  He has alleged that PharMerica executed a scheme to defraud the government and paid kickbacks to SNFs.  See Allison Engine Co., Inc. v. U.S. ex rel. Sanders, 553 U.S. 662, 128 S.Ct. 2123 (2008) (concluding that it must be shown that the conspirators intended "to defraud the Government."); U.S. ex rel. Repko v. Guthrie Clinic, P.C., 557 F.Supp.2d 522, 527

---

3 Having declined to dismiss the federal claims, the Court need not address defendant's additional argument that it should refrain from exercising supplemental jurisdiction over the state claims in this matter.

16

(M.D.Pa. 2008) (In order to establish a conspiracy claim under
the FCA, the relator must allege that "1) the defendant
conspired with one or more persons to get a false or fraudulent
claim allowed or paid by the United States and 2) that one or
more of the coconspirators performed any act to get a false or
fraudulent claim allowed or paid.").  Silver has alleged
PharMerica conspired with SNFs with the intent to defraud the
government by paying kickbacks.  Accordingly, he has alleged
sufficient facts to support a claim of conspiracy.

### 4. Kindred or Chem Rx

PharMerica argues that the conduct alleged in the 13
paragraphs of the complaint pertaining to PharMerica is conduct
of Kindred or of Chem Rx, which are separate corporate entities
from PharMerica.  PharMerica denies that it merged with Kindred
or purchased Chem Rx.  PharMerica states that in 2010, Chem Rx
sought relief under Chapter 11 of the Bankruptcy Code and a
subsidiary of PharMerica, Chem Rx, LLC, purchased the assets of
Chem Rx free and clear of all liabilities.  It also argues that
it is not liable for the conduct of its subsidiaries absent a
piercing of the corporate veil.

Relator responds that in 2007, PharMerica and Kindred
merged to "form defendant PharMerica."  Relator also states
that according to PharMerica's 2008 10-K, filed with the

17

Securities and Exchange Commission, the companies "combined their respective institutional pharmacy businesses, . . . into a new, stand-alone publicly traded company," and that PharMerica's 2013 10-K, which contains a "list of subsidiaries" makes no mention of Kindred.  Relator argues that PharMerica provided no support for its argument that Kindred is a subsidiary.

In addition, Relator argues that PharMerica purchased Chem Rx's assets pursuant to an agreement between PharMerica and Chem Rx dated September 26, 2010.  Relator also argues that liability exists on the part of PharMerica for Chem Rx's conduct under three principles: 1) PharMerica's de facto merger and/or consolidation of Chem Rx into its core business created successor liability; 2) traditional concepts of successor liability; and 3) veil-piercing standards.

The resolution of whether PharMerica retains liability for the acts of Kindred or Chem Rx involves a determination of certain facts which go beyond what the Court can review on a motion to dismiss.  See Southern, 181 F.3d at 426 (a court reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice).  Determination of the business relationship among PharMerica, Kindred and Chem Rx would require the parties to submit additional evidence.  Thus,

18

consideration of this matter would require the Court to analyze documents beyond pleadings and require the Court to convert this portion of the motion to dismiss into a motion for summary judgment.  See Fed. R. Civ. P. 12(b).  At this juncture, the Court declines to convert this portion of the motion into a motion for summary judgment.  Accordingly, the Court will deny this portion of the motion to dismiss without prejudice.  The parties may file a motion for summary judgment, according to any pertinent scheduling order, on this issue and attach properly attested documents, affidavits, or testimony regarding the business arrangement among PharMerica, Kindred and Chem Rx.  See Fed. R. Civ. P. 56(c).

### 5. Statute of Limitations

#### a. Federal FCA Claims

PharMerica argues that since FCA claims are limited by a six-year statute of limitations where, as here, the government declines to intervene, FCA liability cannot extend to claims submitted to the government earlier than March 4, 2005.

Relator responds that the limitations period is 10 years, pursuant to 31 U.S.C. § 3731(b)(2).  He states that he filed his original complaint March 4, 2011 and his first amended complaint setting forth the AWP based and free drug claims on April 19, 2012, and that facts material to the right of action were not

19

known or reasonably known by the official of the United States charged with responsibility to act in the circumstances ten years from these dates, March 4, 2001 and April 19, 2002, respectively.  Relator argues that only claims for the period before March 4, 2001 and April 19, 2002 should be time-barred.

Relator further argues that if the ten year statute of limitations does not apply then the Wartime Suspension of Limitations Act ("WSLA") (18 U.S.C. § 3287) applies to extend the statute of limitations back to October 11, 2002, the date on which hostilities with Iraq were initiated.

The time limitation for filing a FCA action is outlined in Section 3731(b) which states:

A civil action under section 3730 may not be brought--

(1)   more than 6 years after the date on which the violation of section 3729 is committed, or

(2)   more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,

whichever occurs last.

31 U.S.C.A. § 3731.

A plain reading of the statute compels the conclusion that a FCA claim must be filed within six years, or if the U.S.

government intervenes, the limitations period is extended for three years.  This is the conclusion reached by courts in this District and this Circuit.  See U.S. ex rel. Simpson v. Bayer Corp., No. 05-3895, 2014 WL 1418293, at *12 n.15 (D.N.J. Apr. 11, 2014) ("The three-year tolling period set forth in 31 U.S.C. § 3731(b)(2) applies only when the Government elects to intervene in a qui tam action.... When the Government declines to intervene the six-year statute of limitations set forth in 31 U.S.C. § 3731(b)(1) applies.") (citing U.S. ex rel. Bauchwitz v. Holloman, 671 F.Supp.2d 674, 692-95 (E.D.Pa. 2009)); U.S. ex rel. Bergman v. Abbot Laboratories, 995 F.Supp.2d 357, 377 (E.D.Pa. 2014) ("The Eastern District has ... held that the FCA's own tolling provision does not apply to cases where the government has chosen not to intervene.") (collecting cases); accord United States ex rel. Eisenstein v. City of New York, 556 U.S. 928, 937, 129 S.Ct. 2230, 2237 (2009) (finding that when the United States declines to intervene in a FCA action, it is not a party to the litigation).

Likewise, the statute of limitations is not tolled for the relator under the WSLA in cases where the government declines to intervene.  See Bergman, 995 F.Supp.2d at 377 ("the WSLA does not toll the FCA's statute of limitations for relators without the government's intervention, especially when those cases do

not involve military or war-related contracts"); <u>Hericks v.</u>
<u>Lincare Inc.</u>, No. 07-387, 2014 WL 1225660, at *14 n.16 (E.D.Pa.
Mar. 25, 2014) (finding the WSLA does not toll the statute of
limitations in a FCA case).

Accordingly, the six year statute of limitations applies
and FCA liability cannot extend to claims submitted to the
government earlier than March 4, 2005.

### b. State FCA Claims

PharMerica also argues that the state claims should be
dismissed to the extent that they rely upon conduct that
predates the effective date of the state fraud statutes (enacted
after 1999) or the applicable statutes of limitation.

Relator states that 15 of the 28 state FCA statutes at
issue in this case were enacted before the fraudulent conduct
commenced in this case or expressly provide for retroactivity of
the statute, specifically, California, Delaware, Florida,
Hawaii, Illinois, Louisiana, Maryland, Massachusetts, Michigan,
Nevada, Tennessee, Texas, Virginia, Wisconsin, and the District
of Columbia.  For the remaining states, Relator argues that he
is entitled to pursue claims under the relevant state FCA
provisions for all false claims submitted after each statute's
respective effective date, as follows: Connecticut (effective
10/5/09), Georgia (effective 5/24/07), Indiana (effective

5/11/05), Montana (effective 10/1/05), New Hampshire (effective 1/1/05), New Jersey (effective 3/13/08), New Mexico (effective 5/19/04), New York (4/1/07), Oklahoma (11/1/07), and Rhode Island (effective 2/15/08).  Relator maintains that the state FCAs that are silent on the issue of retroactivity should be applied retroactively so long as doing so is not contrary to express legislative history or does not result in any manifest injustice.

PharMerica replies that any retroactive application of the state statutes to conduct predating their enactment would be unconstitutional under the Ex Post Facto clause of the United States Constitution.

For the reasons explained below, PharMerica has not shown that the Ex Post Facto clause is applicable here, and has not shown how the language in each state's fraud statute prohibits retroactive application prior to its enactment date.

"The States are prohibited from enacting an ex post facto law." Garner v. Jones, 529 U.S. 244, 249, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000)(citing U.S. Const., Art. I, § 10, cl. 1). "One function of the Ex Post Facto Clause is to bar enactments which, by retroactive operation, increase the punishment for a crime after its commission." Id.  To determine if a "law constitutes retroactive punishment forbidden by the Ex Post

Facto Clause," it is necessary to "ascertain whether the legislature meant the statute to establish civil proceedings." Smith v. Doe, 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (internal quotation marks omitted).  If "the intention of the legislature was to impose punishment, that ends the inquiry."  Id.  However, if the intent was to enact a civil and nonpunitive regulatory scheme, then further examination is made as to "whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil."  Id. (internal quotation and editorial marks omitted).

     A relator bringing a FCA claim is a civil proceeding.  See U.S. ex rel. Miller v. Bill Harbert Intern. Const., Inc., 608 F.3d 871, 878-79 (C.A.D.C. 2010); Sanders v. Allison Engine Co., Inc., 703 F.3d 930, 942-43 (6th Cir. 2012).  PharMerica has not presented evidence that all or any of the state statutes' schemes are so punitive as to warrant deeming them penal in nature.  As a general matter, retroactive application of civil state statute prohibiting fraud claims would not violate the Ex Post Facto Clause of the U.S. Constitution.  See Miller, 608 F.3d at 878-79 (finding that the Ex Post Facto Clause of the Constitution applies only to penal legislation and FCA is not penal).  However, in order to decide whether a state statute is barred from retroactive application, or if it is penal in

24

nature, it is necessary to review the language of the statute to determine the intent of the lawmakers.  There can be no blanket proclamation as to all of the state's statutes.  PharMerica has not outlined the pertinent language in each state's statute, noted the date of enactment (in relation to the date of alleged fraudulent conduct), or explained the proposed scheme in each that would render it punitive.  As such, PharMerica's motion will be denied without prejudice on this issue and the Court will not reach the merits on the retroactivity of each state's FCA law at this time.[4]

### 6. State Law Procedures

PharMerica alleges that the complaint fails to allege that Silver provided required information related to the alleged false claims to a specific state government official or entity when he filed his Complaint in March, 2011 or immediately thereafter.  Relator argues that no federal or state qui tam statute requires that a relator plead compliance with the procedural requirements of state FCAs, such as service of the complaint and disclosure statements on the state government. Relator further argues that all of the states were properly

---

[4] The Court has not ruled that any particular state statute can be applied retroactively.  Rather, this is PharMerica's motion and, therefore, its burden to prove that the state statutes cannot be applied retroactively.

served, and because no state complained that it did not have sufficient time to conduct an investigation under seal, Relator has met the applicable service requirements.

PharMerica has not shown that Relator's complaint should be dismissed for failure to allege that he properly served government officials, or even that it is a requirement that he provide such allegations in his complaint.  Therefore, PharMerica's motion to dismiss on this ground will be denied without prejudice.

IV.  **CONCLUSION**

For reasons explained above, PharMerica's motion to dismiss will be granted in part and denied in part.  PharMerica's motion will be granted as to the statute of limitations on Relator's federal FCA claims which predate March 4, 2005.  On all other issues raised in PharMerica's motion to dismiss, the motion is denied.


                                        s/Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

Dated:    September 29, 2014


26